IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

EQUAL EMPLOYMENT OPPORTUNITY          )
COMMISSION,                           )
                                      )
    Plaintiff,                        )
                                      )
v.                                    )    No. 08-02642-D/P
                                      )
MEMPHIS HEALTH CENTER, INC.,          )
                                      )
    Defendant.                        )

---

### REPORT AND RECOMMENDATION

---

    Before the court by order of reference is defendant Memphis Health Center, Inc.'s ("MHC") Motion for Attorneys Fees and Cost Pursuant to F.R.C.P. 54(d) and 28 U.S.C. § 2412 ("Motion for Attorney's Fees").  (D.E. 80.)  Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a response in opposition and MHC filed a reply.  In considering the Motion for Attorney's Fees, the court has also reviewed all briefs and supporting exhibits filed in connection with MHC's motion for summary judgment, including the parties' sur-reply briefs.

    Based on the entire record, the court submits the following proposed findings of fact and conclusions of law, and recommends that MHC's Motion for Attorney's Fees be granted in part and denied in part.

### I.  PROPOSED FINDINGS OF FACT

MHC is a nonprofit, federally qualified community health center that provides medical services to low income and uninsured patients at several locations in the Memphis, Tennessee area.[1] MHC operates eight sites, including a site in Rossville, Tennessee (the "Rossville site"), where Rita Smith was employed as a dental assistant. Smith also occasionally worked at MHC's primary site (the "Main site"), located on E.H. Crump Boulevard in Memphis. Smith, whose birthday is January 21, 1952, began working for MHC as a dental assistant in July 1983. During the time she was employed by MHC, Smith also performed other administrative and support functions. Smith generally received positive ratings on formal evaluations of her work performance.

On August 15, 2007, MHC laid off Smith due to insufficient utilization of dental services at the Rossville site. MHC provided Smith with a severance package, including six weeks of pay and pay for all of Smith's accrued leave hours. After Smith was laid off, she filed a grievance that challenged her termination and alleged that Dr. Phyllis Branch, a doctor employed by MHC, was biased in favor of Opal Woodfork, a dental assistant at another site. Woodfork's birthday is June 1, 1948. Smith's grievance was denied by William Jackson, MHC's CEO. Smith appealed Jackson's decision to MHC's board of governors by filing another grievance in

---

[1] The proposed findings of fact are taken from the district court's September 10, 2010 order granting MHC's motion for summary judgment.

September 2007.  In her second grievance, Smith asserted that she believed she was laid off because she previously had filed a workers' compensation claim after she was injured on the job at MHC.

During her severance period, Smith applied for two different positions at MHC, one as a medical records clerk and one as a call center operator.  MHC hired Smith to fill the position as a call center operator at MHC's Main site in October 2007.  Subsequently, a dental assistant position became available at MHC's Main site in January 2008.  Smith applied for the position.  Deborah Phillips-Tolliver ("Tolliver"), a woman with no prior history of working for MHC, also applied after being told of the position by Woodfork. Tolliver, whose birthday is January 12, 1959, is younger than Smith by almost seven years.  A third woman of unknown age and who was also an outside applicant applied for the position as well.

Smith was told that she would be interviewed for the dental assistant position at some point in the near future, and she had received indications that she would not learn of the interview setting until the day it was to take place.  Subsequently, on Friday, February 8, 2008, Smith learned that she would be interviewed that same day upon arriving at work.  Smith wore jeans and tennis shoes to work that day, which MHC's "casual Fridays" policy allowed.  Smith did not bring a resume to her interview. The panel for Smith's interview consisted of Dr. Oscar Webb, Dr.

-3-

Sharikia Harris, and Rene Williams, MHC's human resources director. The interviewers did not have Smith's personnel file with them during her interview.  When Smith was asked at the interview why she had not sought another dental assistant position after being laid off by MHC, she responded that she felt God had told her to stay at MHC.  The evaluation forms completed by the interviewers of Smith's interview stated in part that Smith did not take the interview seriously and did not present herself professionally. Tolliver scored higher than Smith on the interviewers' evaluation forms.[2]  Before making the final decision, Dr. Webb conferred with doctors at MHC's Rossville site who previously worked with Smith. The doctors told Dr. Webb that Smith had problems with other employees and they did not care for Smith's work style. Subsequently, MHC hired Tolliver for the dental assistant position instead of Smith.  Although Tolliver possessed only five years of relevant experience, Dr. Webb felt Tolliver came prepared for the interview, responded to questions appropriately, would make a better fit with the department, and would not create friction with the other members of the department's staff.

On February 20, 2008, Smith filed a charge with the EEOC. Based on the information obtained during its investigation of Smith's case, the EEOC determined that there was not reasonable

---

[2]Both Tolliver and Smith were rated as "possible" rather than "strong" candidates for the position.

cause to believe that MHC laid off Smith because of her age. However, the EEOC found reasonable cause to believe MHC failed to re-hire Smith for the open dental assistant position based on age. On September 30, 2008, the EEOC filed an action against MHC in this court alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. The EEOC alleged that MHC failed to re-hire Smith because of her age (56 years old) and also retaliated against Smith for engaging in protected activity (filing grievances after she was laid off).

On July 12, 2010, MHC filed a motion for summary judgment. On September 10, 2010, the district court entered an order granting the motion and dismissing the case ("Summary Judgment Order"). The court found that the EEOC failed to establish a prima facie case of age discrimination because Tolliver was not "substantially younger" than Smith.[3] The court further found that MHC proffered legitimate, nondiscriminatory reasons for its decision not to re-

---

[3]In order to establish a prima facie case of age discrimination under the ADEA, the plaintiff must establish: (1) she was a member of the protected class, meaning she was at least 40 years old; (2) she was subjected to an adverse employment action; (3) she was qualified for a position; and (4) a substantially younger individual was accepted for the position instead of the plaintiff. (See Summ. J. Order at 8) (citing Skelton v. Sara Lee Corp., 249 F. App'x 450, 456 (6th Cir. 2007); Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 459-60 (6th Cir. 2004); Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir. 1982)). In its motion for summary judgment, MHC did not dispute the first three prongs of the EEOC's prima facie case, and instead contested only whether Tolliver qualified as "substantially younger," given that she was only seven years younger than Smith.

hire Smith:

> After the interviews, Dr. Webb felt that Mrs. Tolliver possessed sufficient experience, that she was a "good fit" for the department and would not create "friction," that she was very professional in her attire and appearance at her interview, and that she answered questions more appropriately than Mrs. Smith. Mrs. Tolliver scored higher on her interview evaluations, and information Dr. Webb received from Dr. Harris indicated that, when Mrs. Smith previously worked for Dr. Harris, she was not responsive to her needs and was not timely in completing her assignments. Dr. Webb also possessed information from an MHC staff physician reporting that Mrs. Smith has personal and professional issues.

(Summ. J. Order at 10.)

The court did not agree with the EEOC's contention that MHC deviated from its own hiring policy, which purportedly required MHC to post the opening internally for a period of time before accepting outside applicants and required MHC to give the position to a qualified internal applicant if such a person applied. The court found that the EEOC only relied on anecdotal evidence to support the existence of this hiring policy and that any deviation from this alleged policy could not be said to give rise to an inference of pretext. (Id. at 11-13.) Lastly, the court found that the EEOC failed to establish a prima facie case of retaliation under the ADEA because there was no evidence Smith engaged in any protected activity.[4] The court determined that Smith did not claim

---

[4]"In order to establish a prima facie case of retaliation, the plaintiff must show: (1) that the plaintiff engaged in a protected activity; (2) that the defendant had knowledge of the plaintiff's protected conduct; (3) that the defendant took an adverse employment action towards the plaintiff; and (4) that there was a

in either of her two grievances filed after her layoff in August 2007 that she was being discriminated against based on her age, and thus neither grievance could be construed as complaining of age discrimination.  (<u>Id.</u> at 14.)

After the case was dismissed, MHC filed the present motion seeking an award of attorney's fees in the amount of $63,664.75 and costs and expenses in the amount of $6,725.08, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  In its response, the EEOC does not contend that MHC is not a "prevailing party" or that the amount of fees and expenses are unreasonable. Instead, the EEOC argues the motion should be denied because (1) the Sixth Circuit has yet to determine whether the EAJA applies to an award of attorney's fees under the ADEA, and to the extent the EAJA does apply, the court should hold the EEOC to the common law "bad faith" standard and not the EAJA's "substantially justified" standard; and (2) assuming the substantially justified standard applies, the EEOC's position was substantially justified.

## II.  PROPOSED CONCLUSIONS OF LAW

## A.  Application of the EAJA to the ADEA

The present motion seeks an award of attorney's fees and costs under the EAJA.  That statute provides in relevant part as follows:

---

causal connection between the protected activity and the adverse employment action." <u>Weigel v. Baptist Hosp. of E. Tenn.</u>, 302 F.3d 367, 381 (6th Cir. 2002); <u>see also</u> Summ. J. Order at 14 (quoting <u>Weigel</u>).

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency . . . in any court having jurisdiction of such action.  The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
>
> . . . .
>
> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(b) & (d)(1)(A).

"Under the American rule, parties generally bear their own costs unless Congress specifically provides otherwise." E.E.O.C. v. O & G Spring & Wire Forms Specialty Co., 38 F.3d 872, 881 (7th Cir. 1994) (citing Alyeska Pipeline Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)).  "[P]rior to passage of the EAJA in 1980, even where fee-shifting statutes allowed for costs, the federal government retained its common law immunity from suit unless the fee-shifting statute or some other statute explicitly allowed recovery from the United States (such as Title II of the Civil Rights Act, 42 U.S.C. § 2000a-3(b))."  Id. (citing 28 U.S.C. § 2412; Alyeska, 421 U.S. at 265-67).  "The EAJA significantly overhauled § 2412 to allow for recovery against the federal government.  Section 2412(b) waived the government's immunity from

-8-

suit and provided that the United States would be liable for fees under the common law to the same extent as any other party." Id. Moreover, § 2412(d) "carved out an exception to the common law for most litigants" and holds "the government to a higher standard." Id. "The award is mandatory *unless* the government can demonstrate that its position was 'substantially justified.'" E.E.O.C. v. Clay Printing Co., 13 F.3d 813, 815 (4th Cir. 1994) (emphasis in original) (citing Crawford v. Sullivan, 935 F.2d 655, 658 (4th Cir. 1991)).

Although the Sixth Circuit has not yet addressed the application of the EAJA in ADEA cases, both the Fourth and Seventh Circuits have held that a prevailing defendant in an ADEA case may recover attorney's fees from the EEOC under the EAJA, and that fees must be awarded unless the court finds that the EEOC's position was "substantially justified" or that special circumstances would make an award unjust. See O & G Spring & Wire Forms Specialty, 38 F.3d at 881-84 (discussing the history of the ADEA and holding that the substantially justified standard found in § 2412(d) applied, as opposed to the common law bad faith standard); Clay Printing Co., 13 F.3d at 815 (same).

The EEOC relies primarily on two cases in support of its argument that the common law bad faith standard should apply to the EEOC. See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1437 (11th Cir. 1998); E.E.O.C. v. Hendrix Coll., 53 F.3d 209, 211 (8th

Cir. 1995).  However, neither of those cases addressed the issue of whether the substantially justified standard applies to the EEOC in ADEA cases.  The <u>Turlington</u> court, in holding that a district court may award attorney's fees to a prevailing ADEA defendant "only upon a finding that the plaintiff litigated in bad faith," 135 F.3d at 1437, cited <u>Hendrix</u>, <u>O & G Spring & Wire Forms Specialty</u>, <u>Gray v. New Eng. Tel. & Tel. Co.</u>, 792 F.2d 251, 260 & n.1 (1st Cir. 1986), and <u>Morgan v. Union Metal Mfg.</u>, 757 F.2d 792, 796 (6th Cir. 1985).  As mentioned above, the court in <u>O & G Spring & Wire Forms Specialty</u> held that the substantially justified standard of § 2412(d) applies to ADEA cases, and in doing so, expressly rejected the EEOC's argument that the bad faith standard should apply.  <u>O & G Spring & Wire Forms Specialty</u>, 38 F.3d at 883.  In <u>Hendrix</u>, the court noted that "[t]he *parties agree* that a prevailing defendant in an ADEA case can recover attorney's fees only upon a showing that the plaintiff has litigated the action in bad faith," which suggests that the issue was not raised on appeal.  <u>Hendrix</u>, 53 F.3d at 211 (emphasis added).  Moreover, since <u>Hendrix</u>, the Eighth Circuit has observed that "[t]his circuit has not addressed whether the EAJA's substantially justified standard can be used to award attorney fees to prevailing defendants in cases brought by the United States under the ADEA" and that "[b]ecause we hold the EEOC was substantially justified in bringing this action . . . , we do not reach the issue of whether the EAJA's substantially justified

standard applies for an attorney fees award against the EEOC."
E.E.O.C. v. Liberal R-II Sch. Dist., 314 F.3d 920, 926 (8th Cir.
2002), abrogated on other grounds, Torgerson v. City of Rochester,
643 F.3d 1031 (8th Cir. 2011). Gray dealt primarily with the
application of the EAJA in an Employment Retirement Income Security
Act ("ERISA") case brought by a former employee, not the EEOC. The
court only briefly mentioned at the end of the opinion that the bad
faith standard applied to the ADEA claim without discussing the
EAJA or the substantially justified standard. Gray, 792 F.2d at
260 & n.1. Likewise, the court in Morgan affirmed the district
court's attorney's fee award on the grounds that the former
employee pursued his age and disability discrimination case in bad
faith, but did not discuss the EAJA or the substantially justified
standard. Morgan, 757 F.2d at 796.

In sum, the court agrees with O & G Spring & Wire Forms
Specialty and Clay Printing, and concludes that a prevailing
defendant in an ADEA case may recover attorney's fees from the EEOC
under the EAJA and that the court must apply § 2412(d)'s
substantially justified standard in deciding whether a prevailing
defendant is entitled to attorney's fees.

**B.   Whether the EEOC's Position Was Substantially Justified**

Before fees can be awarded under § 2412(d)(1)(A), (1) the
claimant must be a prevailing party; (2) the government's position
must not have been substantially justified; (3) there must be no

special circumstances that make an award unjust; and (4) a fee application must be submitted to the court within thirty days of final judgment and be supported by an itemized statement. Comm'r, I.N.S. v. Jean, 496 U.S. 154, 158 (1990); Krecioch v. United States, 316 F.3d 684, 687 (7th Cir. 2003); Perales v. Casillas, 950 F.2d 1066, 1072 (5th Cir. 1992). The EEOC does not (and cannot) dispute that MHC is a prevailing party and that the fee application was timely filed with supporting billing records. Moreover, the EEOC does not contend that there are special circumstances that make an award unjust in this case. Therefore, the only issue that this court must analyze is whether the EEOC's position was substantially justified.

The EEOC bears the burden of demonstrating that its position was substantially justified. Pickering v. Mukasey, 306 F. App'x 246, 248 (6th Cir. 2009) (citing E.W. Grobbel Sons, Inc. v. Nat'l Labor Relations Bd., 176 F.3d 875, 878 (6th Cir. 1999)). The Supreme Court has defined "substantially justified" as being "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person . . . . [A] position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." Pierce v. Underwood, 487 U.S. 552, 565-66 & n.2 (1988); see also Pickering, 306 F. App'x at 248

-12-

(citing Pierce); O & G Spring & Wire Forms Specialty, 38 F.3d at 884 ("Obviously [substantially justified] requires a stronger showing than mere good faith, but does not require a showing that the government's position was either correct or even 'justified to a high degree.'"); Clay Printing, 13 F.3d at 815 ("'Substantially justified' means 'justified to a degree that could satisfy a reasonable person' or having a 'reasonable basis both in law and fact.'") (quoting Pierce).

There is a difference of opinion among the courts as to whether the substantially justified determination should be made based on the party's position as a whole, or whether the court may conduct a claim-by-claim analysis. Compare Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 138-39 (4th Cir. 1993) (courts should make one determination of whether the government's position was substantially justified by looking at case as a whole); F.D.I.C. v. Fleischer, No. 93-2062-JWL, 1996 WL 707030, at *2 (D. Kan. Oct. 16, 1996) ("The Supreme Court's emphasis on the use of the singular 'position' in the statute and its conclusion that a case should be treated as a whole militates against a claim-by-claim application of the 'substantially justified' standard."); Watson v. Chater, No. 92-1178-FR, 1996 WL 50975, at *3 (D. Or. Jan. 19, 1996) (rejecting government's argument that the court should evaluate its position at each stage of litigation to determine whether its position was substantially justified); Utu Utu Gwaitu

Paiute Tribe v. Dep't of the Interior, 773 F. Supp. 1383, 1386-87 (E.D. Cal. 1991) (concluding that broad language in Jean renders claim-by-claim analysis improper), with Hanover Potato Prods., Inc. v. Shalala, 989 F.2d 123, 131 (3d Cir. 1993) ("We have already held that substantial justification on the part of the Government in opposing one of the plaintiff's *claims* does not render its position substantially justified as to all of its other claims.") (emphasis in original); Cinciarelli v. Reagan, 729 F.2d 801, 810 (D.C. Cir. 1984) (engaging in claim-by-claim analysis for determining substantial justification); Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 698 F. Supp. 2d 168, 175 (D.D.C. 2010) (making separate substantial justification determinations for two entirely distinct factual and legal events); S.E.C. v. Morelli, No. 91 CV 3874, 1995 WL 9387, at *6 (S.D.N.Y. Jan. 11, 1995) (holding that Jean does not preclude a claim-by-claim determination of whether the government's position as to each claim was substantially justified).   In this case, the court believes that it is appropriate to evaluate each claim separately to determine whether the EEOC's position was substantially justified.   Although MHC's decision not to hire Smith for the dental assistant position formed the basis for bringing both claims, and there is undoubtedly some factual overlap with the claims, the claims are not so complex or closely intertwined such that the court cannot examine the claims separately to assess

-14-

whether MHC is entitled to fees.

    1.   <u>Failure to Hire Discrimination Claim</u>

    As to the EEOC's discrimination claim, the courts finds that the EEOC's position that MHC violated the ADEA by failing to hire Smith because of her age was substantially justified.  As discussed in the Summary Judgment Order, the EEOC satisfied the first three prongs of its prima facie case, that is, Smith was a member of a protected class (at least 40 years old), she was subjected to an adverse employment action, and she was qualified for the position of dental assistant.  The court concluded, however, that because Tolliver was only seven years younger than Smith, the EEOC failed to satisfy the fourth prong of the prima facie case – that a substantially younger individual was accepted for the position instead of the plaintiff.

    In <u>Grosjean v. First Energy Corp.</u>, 349 F.3d 332 (6th Cir. 2003), the Sixth Circuit stated that when the person to whom the plaintiff is being compared is younger than the plaintiff by ten years or more, courts have generally held that the "substantially younger" prong of the <u>McDonnell Douglas</u> test has been met.  <u>Id.</u> at 336-38.  Similarly, "[t]he overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination prima facie case."  <u>Id.</u> at 338.  While the Sixth Circuit has declined to create a bright line rule for determining

-15-

what qualifies as "substantially younger" for purposes of
establishing a prima facie case, it has held that "in the absence
of direct evidence that the employer considered age to be
significant, an age difference of six years or less between an
employee and a replacement is not significant." Id. at 340.  The
court in Grosjean noted the holding of an earlier case, Cicero v.
Borg-Warner Auto. Inc., 280 F.3d 579, 589 (6th Cir. 2002), in which
the Sixth Circuit held that an age gap of seven-and-a-half years –
which the Grosjean court interpreted as an eight-year gap – was
sufficient to create an issue of fact for the jury.  Grosjean, 349
F.3d at 340.  As the district court stated in the present case,
"[t]he opinion in Grosjean leaves unaddressed cases, like the
instant one, in which the difference in ages is more than six but
less than seven-and-a-half years." (Summ. J. Order at 9.)

     Although the district court concluded that Tolliver was not
substantially younger than Smith, the EEOC nevertheless had a
reasonable basis in law and fact to take the position that Tolliver
was substantially younger, based on the following: (1) the lack of
a bright line rule within this circuit regarding an age difference
of seven years; (2) in at least one case, the Sixth Circuit has
stated that "[a]ccording to the rule in Grosjean, the seven year
difference in age might be sufficient to satisfy the fourth element
of the McDonnell Douglas analysis," see Williams v. Tyco Elec.
Corp., 161 F. App'x 526, 536 (6th Cir. 2006); (3) the lack of

-16-

consensus among the courts in other circuits regarding what age differences are considered significant enough to make out the fourth prong of the prima facie case, see Grosjean, 349 F.3d at 336-40 (extensively surveying ADEA cases in other circuits); (4) a prima facie case may be shown even where the younger person hired is within the protected age group, as was the case with Tolliver, see id. at 336; and (5) there was deposition testimony from Dr. Webb, the sole decision maker, that he believed Tolliver was in her late forties and Smith was in her fifties.

The district court also found that the EEOC failed to demonstrate MHC's proffered reasons for its decision not to offer the dental assistant position to Smith were merely pretext.  In reaching this decision, the court rejected the EEOC's contention that MHC deviated from its own hiring policy, found that the EEOC only relied on anecdotal evidence to support the existence of this hiring policy, and concluded that any deviation from this policy could not be said to give rise to an inference of pretext. (Summ. J. Order at 11-13.)

Based on the evidence submitted in connection with the motion for summary judgment, however, the court finds that the EEOC had a reasonable basis in fact and law to support its position that MHC's proffered reasons for its employment decision were merely pretext for discrimination.  Specifically, the EEOC supported its opposition to the motion for summary judgment with evidence that

(1) Smith worked for MHC as a dental assistant since July 1982; (2) she generally received positive ratings on formal evaluations of her work performance; (3) Dr. Phyllis Branch, MHC's Dentist Director who had most recently evaluated Smith's performance as a dental assistant in 2006 and 2007, gave Smith an overall rating of "4.1" or "Excellent Performance"; (4) Smith was the only dental assistant at MHC at one point in 2005, working in both the Rossville and Main sites during that time; (5) at age 56, she applied for the dental assistant position at the Main site; (6) she was not told until the day of her interview, which happened to be "casual Friday" at her workplace, that she would be interviewed later that same day; (7) she testified that she would have looked "her best" if she had been given adequate notice of her interview; (8) Dr. Webb's decision not to hire Smith was based, in part, on how she dressed for the interview and his perception that she did not take the interview seriously; (9) the interviewers did not bring Smith's updated personnel file with them to her interview; (10) Dr. Webb never discussed Smith's performance with Dr. Branch; and (11) Dr. Webb knew that Smith worked as a dental assistant for MHC for over twenty years and that Tolliver had only five years of experience.

In addition, although the district court was not persuaded by the EEOC's evidence regarding MHC's alleged internal hiring policy, the EEOC did present some evidence to support its allegation that

MHC had a policy of initially making openings available to its own employees and filling openings with qualified employees before advertising the openings to outside applicants. For example, the EEOC submitted an affidavit from William McInnis, MHC's Business Office Director from 2006 through 2008. (McInnis Aff. ¶ 2.) His duties included supervising employees who worked at the business office at the Main and Rossville sites, and he was familiar with MHC's policy for filling open positions. (Id. ¶¶ 2-3.) McInnis stated that MHC's policy was to first post an open position for internal applicants only, and a qualified applicant from inside MHC would be awarded the position without it ever being advertised to outside candidates. (Id. ¶ 3.) If no qualified internal candidates applied after a week's time, MHC would then seek outside applicants. (Id.) According to McInnis, qualified internal applicants usually were reassigned into open positions without having to go through an interview process or submit a formal resume. (Id.) McInnis stated that he informed Jackson that Smith had applied for the position of dental assistant and that she should get the position in accordance with MHC's policy, but that Jackson replied, "she can apply for the position like anybody else." (Id. ¶ 7.) McInnis also identified other MHC workers who were significantly younger than Smith and who were reassigned to open positions without having to go through an interview process. (Id. ¶ 8.) The EEOC also relied on persuasive case law from within

-19-

this Circuit for the proposition that "an employer's deviation from its own policies can, in some instances, provide evidence of pretext." Love v. TVA Bd. of Dirs., No. 3:06-0074, 2008 WL 906115, at *17 (M.D. Tenn. Mar. 31, 2008). Thus, the EEOC's position as to the discrimination claim, even though ultimately rejected by the district court, was substantially justified.

    2.   <u>Retaliation Claim</u>

The district court granted MHC's motion for summary judgment on the retaliation claim based on the failure by the EEOC to satisfy the first prong of its prima facie case of retaliation – that Smith engaged in protected activity. Specifically, the court found that Smith failed to complain of age discrimination when she filed her two grievances after being laid off from her job. The court stated that "[a]lthough a complainant need not use any particular 'buzz words' in her complaint to qualify for protection under the ADEA's anti-retaliation provisions, there must at the very least be some basis from which it can be reasonably concluded that the complainant alleged legally invidious discrimination by the employer." (Summ. J. Order at 15) (citing Longs v. Ford Motor Co., 647 F. Supp. 2d 919, 932-33 (W.D. Tenn. 2009)); see also Fox v. Eagle Distrib. Co., Inc., 510 F.3d 587, 591 (6th Cir. 2007) (finding that plaintiff's discussion with store manager was not protected activity under the ADEA because plaintiff's statements did not amount to opposition to an unlawful employment practice by

defendant); <u>Willoughby v. Allstate Ins. Co.</u>, 104 F. App'x 528, 531 (6th Cir. 2004) (rejecting claim that letter sent preceding retaliation constituted protected activity where letter made only vague references to unhappiness among Caucasian employees); <u>Barber v. CSX Distrib. Servs.</u>, 68 F.3d 694, 701-02 (3d Cir. 1995) (determining that letter by plaintiff, which alleged that he had been treated unfairly and the position was given to a less qualified applicant, did not explicitly or implicitly allege that age was the reason for the unfairness and that "[a] general complaint of unfair treatment does not translate into a charge of illegal age discrimination").

The court finds that the EEOC's position regarding the retaliation claim was not substantially justified.  Smith filed two grievances, one on August 15, 2007, and the other on September 14, 2007.  In her grievances, Smith stated that she "was given a letter of termination after 25 years of competent service," that she felt "that a bias[ed] decision was made" and "favoritism" was shown to another employee who was a "new hire"; that she gave MHC the "very best years of my life"; and that she thought it was "a sad commentary [that after] a quarter of [a] century, [MHC] would replace me with individuals with 1 1/2 years to 5 months employment."  Even under the most generous reading, these grievances do not explicitly or implicitly make any allegation of age discrimination.  To the contrary, Smith alleged that MHC's

decision was the result of "favoritism" towards another employee (presumably Woodfork, who was older than Smith) and, later, that she believed her termination was based on her filing a claim for workers' compensation benefits.

## C.   Attorney's Fees Calculation

Analyzing a request for an award of attorney's fees pursuant to the EAJA involves a two-step process.   First, the court multiplies the hours the attorney reasonably devoted to the case by an appropriate hourly rate.   The court must exclude hours that were not reasonably expended because they were "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983).   Second, the court must adjust the fee award to ensure it is reasonable, especially in light of the results obtained by counsel.   Id. at 434.

Lead trial counsel for MHC, Robin H. Rasmussen, submitted an affidavit with detailed billing records in support of MHC's Motion for Attorney's Fees, in which she claims 199.80 hours spent by her, 34.20 hours spent by attorney James O. Evans, 55.25 hours spent by attorney Peter Baskind, and 10.7 hours spent by her paralegal. Rasmussen claims an hourly rate of $275.00 for her work performed outside the office, $225.00 per hour for her work performed in her office, $175.00 per hour for Evans and Baskind, and $80.00 per hour for her paralegal.   The total amount of attorney's fees claimed is $63,664.75.

A $125.00 per hour statutory cap applies to attorney's fees under the EAJA, "unless the court determines that an increase in the cost of living or a special factor, such as limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." ACE Constructors, Inc. v. United States, 81 Fed. Cl. 161, 168 (2008) (citing 28 U.S.C. § 2412(d)(2)(A)(ii)); see also Newmark v. Principi, 283 F.3d 172, 177 (3d Cir. 2002) (stating that fees awarded under § 2412(d) mandates a capped fee award to the prevailing party if the government's position was not substantially justified). The specialized knowledge or skill of an attorney only justifies an enhanced award when the knowledge or skill is "an identifiable practice specialty such as patent law, or knowledge of a foreign law or language." Pierce, 487 U.S. at 572. The EAJA allows for the $125.00 statutory cap to be exceeded if "the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The party seeking the increase in the hourly-fee rate bears the burden of producing appropriate evidence to support the requested increase. See Bryant v. Comm'r of Soc. Sec., 578 F.3d 443, 449-50 (6th Cir. 2009). Although MHC has not specifically requested that it be allowed to exceed the statutory cap of $125.00 – and it has not presented the court with evidence to suggest that this case required any specialized skill or that there is a limited availability of qualified attorneys – the court notes that cost-of-

-23-

living increases under the EAJA are routinely approved.  See Role
Models Am., Inc. v. Brownlee, 353 F.3d 962, 969 (D.C. Cir. 2004)
(stating that courts routinely approve COLA increases in EAJA
cases).  The court finds that a cost-of-living increase is
warranted in this case.  Based on a review of MHC's attorney
billing records, the vast majority of work was performed during
2010, and using the Consumer Price Index, the court calculates that
the $125.00 per hour cap has increased to $173.72 for the year
2010.  Therefore, the court will apply an hourly rate of $173.72 to
MHC's attorneys.[5]

    With respect to the reasonableness of the time expended, the
EEOC has not raised any objections to the hours claimed by MHC.
The court has reviewed the billing records and finds the legal
services performed and time spent to be reasonable.  As for
expenses, MHC claims $93.80 in photocopying costs, $10.05 for Pacer
charges, $1,062.88 for Westlaw research charges, $593.60 for travel
expenses to Atlanta for depositions, and $4,964.75 for deposition
costs for eight depositions.  The total amount of costs and
expenses claimed is $6,725.08.  The EEOC has not raised any
objections to the claimed costs and expenses.  Based on a review of
the records, the court finds that the amounts claimed are
reasonable and recoverable.  See Orantes-Hernandez v. Holder, 713

---

    [5]The EEOC cannot complain of the cost-of-living increase, as
it did not raise any objections to MHC's attorneys' claimed hourly
rates, which exceeded $173.72 per hour.

F. Supp. 2d 929, 970-71 (C.D. Cal. 2010) (citing cases and finding expenses such as telephone calls, photocopying, postage, attorney travel expenses, computerized research expenses, and deposition costs are compensable under the EAJA).

Finally, the court must decide to what extent, if any, the overall fee award should be reduced to reflect the court's finding that the EEOC was substantially justified on the discrimination claim but was not substantially justified on the retaliation claim. As mentioned previously, the discrimination and retaliation claims overlap somewhat in both the law and facts, and the court cannot accurately identify, based on the billing records, the attorney's fees and costs spent on each claim. Although no estimate will be exact, the court will attribute 50% of the attorney's fees and costs to MHC's defense of the retaliation claim and 50% to its defense of the discrimination claim. Therefore, the court will reduce the overall fee award by 50%.

### III.   RECOMMENDATION

For the reasons above, it is recommended that MHC's Motion for Attorney's Fees be granted in part and denied in part. Based on total attorney time of 289.25 hours x $173.72.00 per hour (a total of $50,248.51) and paralegal time of 10.7 hours x $80.00 per hour (a total of $856.00), with a 50% reduction, it is recommended that MHC be awarded $25,552.26 in attorney's fees. Based on total costs and expenses of $6,725.08, with a 50% reduction, it is recommended

that MHC be awarded $3,362.54 in costs and expenses.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

August 10, 2011
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**